The next case today is Donald C. Kupperstein v. Irene Schall et al., Appeal No. 201472. Mr. Baker, whenever you're ready. Thank you, Your Honor. Donald Kupperstein is before the Court again seeking to correct error of the Bankruptcy Court in two respects. Firstly, holding that the automatic stay does not apply to the attempt by the appellees to collect a debt and that even if it did, he would grant relief from the stay so that they could undertake their collection actions. The basis for the ruling that the automatic stay did not apply is the provision in the section 362 of the Bankruptcy Code, which provides that certain actions by government entities are not stayed by the automatic stay. These include criminal actions and it also includes actions to enforce the government's interest in enforcing its regulations. But the police power provision of the Bankruptcy Code is abundantly clear that the exception does not apply to the collection of money judgments. They can go forward to obtain the judgment, but they can't collect it. And really, as I say, the Bankruptcy Code is very clear about that. Counsel, the money that was at issue in these contempt proceedings, what exactly were the dollar amounts at issue? And what did those dollar amounts reflect? You keep referring to it as a money judgment, like it was comparable to the judgment that the state was trying to collect for the Medicaid lien. My sense is that the money at issue here is very different. Now, what are the components of that money that was at stake in the contempt proceedings? Excuse me, the exact amount I don't have in my head, it's about $75,000, $80,000, something like that. And it's all attorney fees and expenses that the appellees incurred in their litigation in the probate court in Bristol County. And tried to enforce orders of the probate court, right? Orders of the probate court that they requested. They filed a complaint for civil contempt in the Bristol County Court. This was not something that the Bristol County Court had initiated on its own initiative. That points up the distinction between criminal sanctions and civil sanctions. They filed a request for contempt prior to your filing for bankruptcy. But that doesn't mean the court, when it imposed certain orders on your client, didn't have an independent right to try to make sure that its orders were upheld. Here we get into the distinction between civil contempt and criminal contempt. Criminal contempt is initiated by the court on its own initiative. And case law is abundantly clear that if it's a criminal contempt, the alleged contender is entitled to all the criminal due process protections. Miranda warnings, the appointment of a public defender if warranted, and so on. Criminal contempt is not governed by the automatic say. Yes, I would absolutely agree with that. But here, the complaint that the Commonwealth filed in the probate family court in Bristol County specifically said these are civil sanctions. Counsel, if he had paid the money at issue, he could have purged himself for the contempt, right? I'm sorry, I didn't quite catch that. If he had paid the money at issue, these attorney's fees and costs, he could have purged himself for the contempt. Is that not right? That's correct, but he doesn't have the money. That's the whole problem. That's why he filed his bankruptcy case. It's hard to say. Again, the initial filing by the Commonwealth wanted to recover money that had been paid out by the Commonwealth as a part of their Medicaid program. And the bankruptcy court's order specifically says that it is not granting relief on that front. That's correct. It's only the proceeds, the attorney's fees, that were expended by the Commonwealth to try and get your client to stop his contemptuous behavior. That's right. His refusal to cooperate in transferring the property back to the state, his refusal to turn over keys, his continuing to rent the property contrary to the court's orders, his collecting of rents that the probate court said belonged to the estate. That's where the money was spent trying to get your client to stop that behavior. And it did stop. Eventually. The probate and family court entered an order voiding that deed. At one point, I believe Mr. Kupferstein did in fact pay $5,000 to the appellees. But beyond that, he simply has no capacity to pay it and didn't have – still doesn't have. He lost a lot of money in this whole transaction. He and his client had put a lot of money into fixing up the house and getting it rentable. He fraudulently – it started out when he fraudulently notarized that deed. Does that make it fraudulent? No, I don't think it makes it fraudulent. He's not a Rhode Island notary. Sorry? He's not a Rhode Island notary. It's a question of fact whether he was in Rhode Island or in Massachusetts at the time. That fact has never been resolved. But the point remains, he didn't obtain the property. It was deeded over to his client. And his client, the commonwealth and the probate personal representative went after his client as well. Got a lot of money from him. So ultimately, if he ever is actually held liable for all this money, then there has to be some offset of what they collected from his client. So ultimately, the transfer – The bankruptcy court allowed the state court to fix the amount. Isn't that correct? Well, I believe the amount was already fixed. But yes, the bankruptcy court didn't get into the question of how much it owed other than, as was said earlier, leaving out the reimbursement of the money paid under the Medicaid grant. So the issue of whether any of this is dischargeable still hasn't been decided. That's correct. It is presumptively dischargeable, but there is a proceeding awaiting the bankruptcy judge's determination of whether it should be discharged. Counsel, why isn't this the classic situation that the cases seem to worry about when the police power exception is invoked? In this instance, meaning the ability of courts to enforce their orders. I mean, here you have a client who, as Judge Thompson was setting forth, has been disregarding over and over again all sorts of orders of the probate court. A hearing is about to begin as to whether he should be cited for contempt for that. And on the eve of those proceedings, he files for bankruptcy in an effort to forestall these court proceedings designed to explore the issue of contempt. I mean, this seems to be exactly the kind of situation that the cases worry about when they say it's an appropriate scenario for invoking the police power exception. It just seems classic. I understand how you look at it that way. But again, we have to go back to the plain language of the statute. The plain language of the statute says the police power exception does not apply to collection of a money judgment. It can proceed to the determination of the judgment, but not to the collection. And that's what Congress has said. We may not always like what Congress says, but we have to go by what they say. And again, I want to emphasize that this court has dealt with this issue before. In the Parker case, though, that case was decided after the discharge. And it was post-discharge activity to try to collect. We're not there yet, which is why I keep coming back to the court has allowed the amount to be reduced. The bankruptcy court can make a determination as to discharge ability, which you can appeal. Or the court can amass the assets of the estate and perhaps apportion some of the assets, the available assets, depending on priority to the Commonwealth. Parker is just in a very different situation than where you are in this case. Well, I understand that. But firstly, let me say that this is a no asset case. It's already been decided. The bankruptcy trustee. But they have a house. Doesn't he have a home? A good question. No, I think it's in a in a trust and is owned actually by his wife. I'd have to go back and look at that. But again, the the bankruptcy trustee. It's my recollection that he listed his home as an asset on his bankruptcy petition. OK, I must confess I hadn't looked at that question. But again, I would point out that the bankruptcy trustee has filed her no asset report. She's finished her administration of the bankruptcy estate. There's nothing for the bankruptcy trustee to do as to his home. Let me back up. I didn't file this case. He filed it with another attorney. And I came in to handle the litigation. So I must confess I'm not fully informed about what the schedules say. But I would assume that he claimed a state law homestead exemption with five hundred thousand dollars. The attorney that did file the case for him is very experienced as a chapter seven bankruptcy trustee himself. So I had no real reason to question anything that's in the schedules. But as to the judgments themselves, I go back to what this court said in the Henry Suarez case. An order that is entered by a state court in violation of the automatic say is void. Not avoidable void. So do you have additional follow up on your question? I'm good. Thank you. All right. Thank you, Mr. Baker. You may mute your video and audio. We'll hear from Mr. Stanford. Thank you. Good morning, your honors. May it please the court. My name is Roger Stanford and I represent Irene Shaw in her capacity as personal representative of the estate of Fred Kuhn at the. There's no need for me to go into the factual basis. Judge Thompson and the prior decision of this court laid out the facts in detail and was right on. But before I start, I'd like to make two points. First of all, attorney Baker continues to say that this was a money judgment. And he implies that both the estate and the personal that through the personal representative and the Commonwealth seek to collect the Medicaid lien. The Medicaid lien was the responsibility of the probate estate. And when the house was finally sold after attorney Copperstein's continued attempts to thwart that, the Commonwealth was paid a little over one hundred and twenty five thousand dollars towards one hundred and ninety one thousand dollars of Medicaid. In addition, in Judge Thompson's questions to attorney Baker, she talked about discharge ability of the debt. In addition to non discharge ability claims, the adversary complaint seeks to deny him a discharge and there are cross motions for summary judgment under advisement. And the basis for the denial of discharge is his failure to list numerous items in his schedules, including his income from his law practice for the year he filed the bankruptcy and the two preceding years. In addition, he failed to list a mortgage and collateral assignments of rents that he personally held on a property in Dorchester, Massachusetts. There are other examples, but I'm going to go on. The police and regulatory power is an exception to the automatic stay, meaning the automatic stay does not exist as to actions to employ to enforce the police and regulatory power. However, in abundance of caution in May of 2008, our office filed a motion for relief from the automatic stay. In retrospect, I probably should have entitled it motion for determination that the automatic stay doesn't exist. And if it does, we'd like relief from the automatic stay. About a week later, the executive office of Health and Human Service filed a similar motion. I agree this is the classic case and the 9th and 7th circuits, in their opinions, have indicated that the that the public policy of the Bristol County probate court and being able to enforce its own orders and. Ensure compliance. And again, counsel, excuse me, I don't I don't think you're being fair to opposing counsel in this sense. He's not he's not arguing that the money judgment at issue here is an attempt to collect further on the Medicaid lien. He's saying that the attempt to collect the seventy five or eighty thousand dollars, which reflects attorneys fees and costs. That's the money judgment he's talking about. And he and I think he's arguing that that that that kind of money, the attempt to collect it, falls within the terms of the pecuniary judgment language of the statute. That's really what he's arguing. So how do you respond to that? Well, first of all, his brief did mention that it was an attempt to collect the Medicaid lien in several points. But in his oral argument, you're right. He did not. And he is referring to that. We say that a court has the ability through the police and regulatory power to enforce its own orders. And a portion of that enforcement would be the imposition of both an incarceration, which the probate court did pre-bankruptcy filing in December of 2017, and also to impose monetary sanctions as a deterrent to the continued activity of the person who is violating court orders. Well, what do you say to his argument that Parker, which which clearly sets forth the difference between criminal contempt and civil contempt, that this is civil contempt? It is a civil contempt. I agree. OK. Which would be dischargeable. And that and that any efforts to put him in jail in order to try to get him to pay something that is dischargeable is beyond the scope of the state order. Well, first of all, some of his contempt continued post-bankruptcy filing. He filed on January 11th and he continued to lease the property out, retain the keys, never bothered to account to anybody for the rents, collect rents in violation. So to the extent that it's a post-bankruptcy filing contempt, that would not be dischargeable. And his incarceration went just not for paying, not solely for paying money, but for solely when you look at the probate court's order in the corrected order in May of 2018, talks in terms of violating direct orders relative to executing and recording documents, listing the property as his own, failing to pay amounts due under prior orders. Entering and trespassing on the property, illegally changing the locks, installing a new tenant. He rented the property. The court told him it wasn't his property and he rented it. And his continued effort after November 29th, 2016, when the probate court said it was not his property. And finally, I just want to point out that the district court affirmed saying that there was a good cause for the granting of relief, which is a different standard under review. And there was ample evidence of good cause, the things that I just indicated. Counselor, can you explain something that seems odd about the record? The district court's decision never addressed the police power exception. And saying that the bankruptcy court hadn't relied upon, that just seems flat out wrong. The bankruptcy court did invoke the police power exception when it denied Mr. Cooperstein's motion to find that the government agency had violated the automatic stay. Can you explain that to me? Why would the district court have said that when it seems clear the bankruptcy court did invoke the police power exception? I was troubled by that, your honor, as well. You're correct. The district court did not reach that issue. Instead, the district court went and found that because there was good cause for the granting of relief, an alternate ground existed. And that thus did not have to reach the issue of whether the police and regulatory powers applied. What are you urging us to do? What do you suggest we try to do? I think you should affirm this, Judge. It strikes me that this attorney with an MBA… That's what Judge LaPierre is asking. Generally, we review the bankruptcy court's order. The bankruptcy court's order said the police power and regulatory power takes it out of the automatic stay, granted us relief, and then added for good cause shown, I believe was the language the judge in the bankruptcy court used in his order. So are you saying that the comment for good cause shown was in connection with the police power determination? Or are you saying that the bankruptcy court decided it under both 362 D1 and the police power exception? I'm not sure. I think the order maybe could have been a little bit more detailed. Let's go at it this way. When you filed your petition, did you seek relief under police powers or good cause or both? I only sought under the police powers. However, the Commonwealth, in their motion for relief from the automatic stay, used both grounds. Okay. All right. Thank you. Thank you very much. Mr. O'Neill. Good morning. Excuse me, Mr. Stanford, if you would mute your video and audio. Yes, Mr. O'Neill. Good morning, Your Honors. Paul T. O'Neill for the Commonwealth of Massachusetts Executive Office of Health and Human Services. And given the discussion, I would just like to address some of the questions that the court has asked. In reference to the last question, EOHHS did request relief in its motion for relief from stay under both the police power exception and also for good cause. And it is in the record in its brief. I believe that the U.S. District Court reviewed that, as did the bankruptcy court, in reaching its decision. And I think that although the U.S. District Court did specifically say that it was only reaching the good cause argument to support its upholding of the decision, that it didn't need to reach the police power decision. I think it rightfully so called it a thornier issue. I think it's within its discretion to do so when that argument is in the record and was in the record before the bankruptcy court. And there is at least reasonable evidence that the bankruptcy court considered that argument below based on our brief. Do you agree that the police power exception is a thorny issue? I don't think it's a thorny issue with respect to EOHHS, Your Honor. And in fact, I would argue in this case that the stay was not in effect because EOHHS's actions squarely fall within the police power exception. We are mandated under 42 U.S.C. 1396P and General Laws 118E to protect the integrity of the Medicaid program, to root out fraud, to make sure that we collect from the estates of deceased members. At no time have we attempted to collect the underlying debt of $191,000 from Mr. Cooperstein. And as to the other question asked by the panel about that, Mr. Baker repeatedly throughout this case has presented that to the courts involved as what we are trying to do. We have never taken any steps to collect that from him. In fact, the original suit asked for the house to be returned to the estate so that it could be sold to pay the debt. And that is how MassHealth typically gets paid. There's something odd here about the way both the probate court and the state proceeded in this sense. I mean, the automatic stay was in place and the probate court and you, I guess you would say in response to the probate court, sort of decided to roll the dice and say, well, we don't think it applies. It's only many, many months later that you're vindicated by the district court. But it's not an odd way to proceed. I mean, isn't there usually an effort to try to get the automatic stay lifted before it's disregarded? Wasn't this a way to proceed? And of course, your opponent says, well, I was, everything that was happening in the probate court was unlawful. I had a right to disregard these unlawful orders. I had the benefit of the automatic stay and everybody else was disregarding it.  Well, in fact, your honor, it was a very, it was a very careful and detailed analysis of this by Judge McMahon of the Bristol Probate Court. He was obviously disturbed that Mr. Cooperstein filed his petition on the eve of being incarcerated for a pre-petition contempt. As you know, the record reflects that on 12-22-17, he issued an order holding Mr. Cooperstein in contempt, not for money, but for acts, for refusing to turn over keys and leases to the property. And then on his own accord, he issued a sua sponte order on 12-26, the day after Christmas 2017, because in the intervening time, Mr. Cooperstein had not turned over keys, leases and documents and control of the property. And the operative order of 12-26-2017, which was the sua sponte order of the court, not something that was requested by EHS, doesn't contain any money award on contempt. No sanctions, nothing. It's all pre-petition acts. And because of that, he, when Mr. Cooperstein came in and claimed that the bankruptcy shielded him from, oh, and your honor, I should point out, he was sentenced already to 30 days in jail pre-petition on 12-22-17. That sentence was an imposed 30-day jail term for the failure to do acts, not the failure to pay money, not the failure to pay MassHealth's underlying judgment, underlying MassHealth claim that was due from the estate. So anything that suggests the contrary, that's in the record. So when he came in, Judge McMahon asked, and EHHS's position was always that the police power applied and allowed us to proceed under the public policy exception and enforcement action to go forward. And he asked us to seek relief, to go forward and seek relief. And that's why we did that, your honor. And as Mr. Stanford pointed out, perhaps we should have asked for a declaration. But this is not a new position that the Commonwealth has taken. With respect to some of the other things that were addressed. Mr. O'Neill, one more minute. Thank you. With respect to some of the other things that were addressed by the court, it is the position of the Commonwealth that there was no stay in effect so that there could be no violation. Also, the appellant has admitted at the hearing on contempt that UHHS took no affirmative act after the petition date of 1-11-18 to do anything to the appellant. That all of those hearings were scheduled exclusively by the probate court, which itself was exercising its police power to enforce its valid orders that had been ignored. I would point out the appellant has also waived many of these issues on review. He did not order a transcript. Is arguing that these are abuses of discretion or clear errors. He can't do that under federal appellate rule of procedure. Can be without ordering a transcript. He indicated in the official record he was ordering a transcript and never did so. As we discussed, the police power exception also applies. And I would also point out, I agree with Judge Lippez that sanctions are not a money judgment. Contempt sanctions are not a money judgment that is contemplated with respect to the money judgment in the automatic stay. The automatic stay, if we look at In Re's spooky world, which is heavily relied on by my colleague, it says that the fundamental judgment of Congress is that protecting the public welfare and safety trumps the concerns that underlie the automatic stay. A provision whose main purpose is to prevent some private creditors from gaining priority on other private creditors. The commonwealth of Massachusetts is not a private creditor. All of the money that it collects goes back to support the taxpayers of the commonwealth. It goes back to support public programs and important public programs that benefit everyone. So clearly the commonwealth falls within that public policy exception and the stay is not intended for this purpose. I would argue the same applies to the Bristol probate court's enforcement of its orders. Thank you, Judge Thompson. I just want a clarification. You indicated that there was no stay. Are you are you saying that there was no stay relative to the commonwealth versus no stay, period? That the commonwealth was exempt from the stay. The commonwealth was exempt from the stay. Not that there was no stay. There was a stay in effect. And as to the estate, I mean, that's a private creditor. And to the extent they were seeking. But but even as to the estate, the estate took no steps to schedule any of these hearings, either. The court itself started with that to respond. They order in response to the failure of Mr. Cooperstein to act to take acts that it had ordered it to take. Counsel, just to pin this down, it is a fact that the commonwealth presumed to make the judgment for itself. That the state did not apply to it. It was not until many, many months later that the judgment that you made was it was vindicated by the ruling of the court. Isn't that correct? I mean, to say the stay was in place. You just made your own judgment. The commonwealth. It doesn't apply. You were vindicated. But well, it's well, you're one of the the the it's an exception to the stay. And so the reason that the commonwealth sought that ruling is because Judge McMahon was not familiar with bankruptcy law. He reviewed bankruptcy law. He agreed that that the case could proceed. But but asked for confirmation. And of course, if he asks us to do that, we're going to do that. And and that's what we did. So it didn't change our position that the state did not apply to our actions. And I think it's clear it does not apply to the actions of the court itself attempting to enforce its own orders. Just one more question. So the way you ordinarily proceed, then, if the if the probate court had not asked for a ruling from the bankruptcy court, you would have treated or you would have made an independent decision that you fell within the exception and proceeded accordingly without seeking any kind of permission on your own. Usually it would be a different motion. It would be a motion asking to confirm that the state doesn't apply. In this case, it would if the case was moving rather quickly because of the filing right before the incarceration hearing. And so there was no opportunity to actually do that until later on. And we did file within a reasonable time after this transpired. So in the normal course of events, we would ask for a declaration concerning that before we proceeded far down the road in a case like this. Thank you, counsel. Thank you all. That concludes argument in this case. Attorney Baker, Attorney Stanford and Attorney O'Neill, you should disconnect from the hearing.